Donahue, J.
It is admitted that, the statute authorizing the county commissioners, auditor and treasurer to enter into this contract with plaintiff is unconstitutional, but it is insisted, on the part of defendant in error, that legislation of this character had heretofore been held constitutional by this court, that he relied upon such holding in making his' contract and performing the services thereunder, and that, therefore, his claim comes within the doctrine announced in the case of Thomas v. State, ex rel., 76 Ohio St., 341.
Our attention is called to the case of State, ex rel., v. Crites, Auditor, 48 Ohio St., 142, wherein the court held similar legislation constitutional. That case was decided February 24, 1891, and, as plaintiff’s contract was made long before that time, it can avail him but little in support of his contention.
The case of State, ex rel., v. Cappeller, 39 Ohio St., 207, is also cited by counsel for defendant in' error, and it does appear that in that case this court held Section 1 of the act of April 14, 1880 (77 O. L., 205), constitutional, but it does not appear that that act had anything to do with the question in that case. In the August settlement, 1.881, the county auditor sought to withhold from the state its share of costs and counsel fees in suits against the auditor and treasurer in relation to their duty in respect to the collection of taxes, and also certain amounts paid by the county to local collectors for collecting delinquent personal *56 taxes for the years 1869 to 1876, inclusive. Section 1 of the act of April 14, 1880 (77 O. L., 205), applied only to persons employed to ascertain and furnish to .the county auditor facts, and evidence necessary to authorize him to subject to taxation property improperly omitted therefrom prior to the passage of that act, and did not relate, to the employment of persons to assist in the collection of delinquent taxes already charged on the tax duplicate.
The determination of the foregoing question, however, is wholly unimportant to the disposition of the case at bar. Conceding that the defendant in error, when he made and entered into this contract with the officials of Hamilton county, had the right to rely upon the judgment of this court in the case of State, ex rel., v. Cappeller, supra, and that, having done so, he should now be protected under the doctrine announced in the case of Thomas v. State, ex rel., 76 Ohio St., 341, it does not necessarily follow that this defendant in error is entitled to be paid the compensation provided for in his contract out of taxes other than the taxes due and unpaid at the time the services, were performed.
An analysis of this contract shows that plaintiff was employed and appointed by the commissioners, auditor and treasurer of Hamilton county “to diligently search for and discover in a lawful manner, omitted, concealed and unassessed taxable real estate that has been omitted from the assessment rolls and • tax duplicate of Hamilton county, Ohio, and upon which said property the taxes are lawfully due and unpaid.” Out of *57 these taxes, when collected, he was to be paid twenty-five per cent, of the total amount actually recovered by the treasurer of Hamilton county, Ohio, from the assessment of such omitted real estate, and it was specially provided in the contract that “nor any part thereof shall be deemed due and owing until the taxes on such omitted real estate aforesaid have actually been paid into the county treasuryThis contract related to and comprehended only the conditions then existing in Hamilton county, and not with conditions that might exist in 1905. By the clear terms of the contract, the taxes out of which he was to be paid for his services were the taxes that were then lawfully due and unpaid, and not out of taxes that might become lawfully due and unpaid twenty years thereafter. He was not entitled to project this contract to include taxes that might accrue beyond the time limited for its termination. The contract was to continue for two years from the 2nd day of May, 1887, and if, by reason of his services, any of the taxes then lawfully due and unpaid upon omitted .real estate, or any taxes that might become lawfully due and unpaid upon omitted real estate during the term of his contract, should be paid into the county treasury, either before or after the expiration of his contract, he would be entitled out of those taxes, and no other, to be paid the compensation provided in the contract.
It is true that his petition does not state for what years the auditor, in 1905, placed this omitted real estate upon the tax duplicate, but, under the law, it could not have been any of the years pre *58 ceding the date of the termination of this contract. According to the averments óf his petition, he furnished this information to the auditor on the 15th day of February, 1888, and out of whatever taxes were then lawfully due and unpaid on omitted real property prior to that date and were actually procured to be paid into the county treasury, he would be entitled by the terms of his contract to be compensated, but not out of the taxes paid upon that same property for a later period. Through a mistake of the taxing officer, this omitted real estate, discovered by defendant in error, was placed upon the tax duplicate in the names of persons who were not liable for the payment of the same, and by reason of this error, these taxes, which he had been instrumental in having placed upon the tax duplicate, never were collected and' never can be collected, and thóug'h the failure to collect the same was, probably, through no fault of his, yet under the terms of his contract, he was to be paid only out of these taxes, and cannot, therefore, be paid out of any other.
The services that he was to render the county, under this contract, so far as this property is concerned, ended with the disclosures he made to the auditor on the 5th day of February, 1888. He does aver in his petition that he furnished evidence in the trial of the several cases, that he employed counsel to assist in the litigation, and that, from time to time, he urged upon the various auditors to place this property upon the tax duplicate for years subsequent to 1888. These services were not contemplated in this contract. They *59 were not the services for which he was to be paid. They were rendered long after the expiration of his contract. These services, so far as tne contract is concerned, were voluntary on his part, and cannot affect his legal rights under the contract. When' he furnished this information to the auditor in February, 1888, he was through with the transaction, except that when collected he was to be paid for this service out of the taxes that were then placed upon the tax duplicate by the county auditor in pursuance of the information furnished to him by defendant in error. That was the' only fund out of which he could be paid. The contract specifically so provided. That fund never came into the county treasury. These taxes never were collected and never will be. They are forever lost, not only to the county, but to all persons interested therein, and while it is unfortunate that this defendant in error should lose his compensation, yet it is equally unfortunate that the county must lose the seventy-five per cent, of these taxes that should have gone into the county treasury, and it would be still more unfortunate for the county if, in addition to this loss, it is compelled to pay out of the taxes accruing many years later the defendant in error’s proportion of the original loss.
It is urged that the taxes now collected by the county on this same property would never have been collected but for the services of this defendant in error. That is perhaps' true, and that was in contemplation at the time the contract was made. ” It was undoubtedly the intention of the parties to the contract that this defendant in error seek for *60 and discover omitted real estate upon which taxes were then legally due and unpaid, that the taxes then legally due and unpaid should be placed upon the tax duplicate, and then out of these taxes, and no others, he should be paid for his services. But it was not the intention of either party to the contract that, after that time, notwithstanding the property should still continue upon the tax duplicate and still continue to be taxed, defendant in error should receive any part whatever of these future taxes. In other words, the whole contract, by its specific terms, related to the taxes then due and unpaid, and not to future taxes that might thereafter be charged against this property.
These facts all appearing from the petition, it follows that the superior court of Cincinnati erred in overruling the demurrer to the petition and that the circuit court also erred in affirming that judgment.

Judgment reversed and judgment for plaintiff in error.

Shaucic, C. J., Johnson, Wanamaker, Newman and Wilkin, JJ., concur.